**TA Legal Group PLLC**
Taimur Alamgir (TA 9007)
315 Main Street, Second Floor
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
*Attorneys for Plaintiff Michael Samson,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
MICHAEL SAMSON, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*                     **Case No:**

              Plaintiff,

                                               **CLASS AND COLLECTIVE**
            - against –                                     **ACTION COMPLAINT**

DELTA BRIDGE FUNDING LLC, CLOUDFUND
LLC, YELLOWSTONE CAPITAL LLC,
FUNDRY LLC, INFUSION CAPITAL GROUP LLC,
FUNDERBOLT CAPITAL LLC, JOHN DOE
CORPORATIONS 1-100, DAVID GLASS,
YITZHAK STERN, JEFFREY REECE,
BARTOSZ MACZUGA, VADIM SEREBRO,
MATTHEW MELNIKOFF and MARK SANDERS,

              Defendants.
------------------------------------------------------------X

**INTRODUCTION**

Plaintiff, Michael Samson ("Plaintiff"), on behalf of himself, FLSA Collective Plaintiffs,

and the Class, through his counsel, TA Legal Group PLLC, hereby files this Class and Collective

Action Complaint against Defendants, Delta Bridge Funding LLC ("Delta Bridge"), CloudFund

LLC ("CloudFund"), Yellowstone Capital LLC ("Yellowstone"), Fundry LLC ("Fundry"),

Infusion Capital Group LLC ("Infusion"), Funderbolt Capital LLC ("Funderbolt"), John Doe

1

Corporations 1-100, David Glass ("Glass"), Yitzhak Stern ("Stern"), Jeffrey Reece ("Reece"), Bartosz Maczuga ("Maczuga"), Vadim Serebro ("Serebro"), Matthew Melnikoff ("Melnikoff") and Mark Sanders ("Sanders"), and alleges as follows:

1.     Defendants own and operate a nationwide "loan-sharking" business that – according to a March 5, 2024 civil complaint filed by the New York Attorney General's office following a years-long and exhaustive investigation - has "engaged for years in a fraudulent, illegal scheme… to fleece money from small businesses…" Ex. A, Complaint in *People of The State of New York, by Letitia James, Attorney General of the State of New York v. Yellowstone Capital LLC, et al*., Supreme Court, New York County (450750/2024) ("AG Complaint").

2.     Usury is not Defendants' only racket. **Defendants have simultaneously engaged in an equally fraudulent and illegal scheme to fleece money from their own employees**.

3.     Plaintiff, Michael Samson, a 24-year old former Sales Representative for Defendants, was subjected to a litany of wage and hour violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") that similarly affected FLSA Collective Plaintiffs and Class Members.

4.     Defendants further scammed Plaintiff, FLSA Collective Plaintiffs and Class members into putting their own money into Defendants' loan syndications with false promises, then, in March 2024, laid everyone off abruptly and absconded with the money. **Plaintiff was robbed of nearly $50,000 of his own hard-earned commissions**.

5.     Defendants abruptly laid off Plaintiff and other employees without written notice in contravention of the federal and New York Worker Adjustment Retraining Notification ("WARN") Acts.

6.      Plaintiff seeks recovery for these egregious and systematic violations on behalf of himself, FLSA Collective Plaintiffs, and Class Members.

## CLAIMS

7.      Plaintiff alleges, pursuant to the FLSA, 29 U.S.C. § 201, et seq., that he and FLSA Collective Plaintiffs are entitled to recover damages from Defendants based on the following violations: (1) unpaid overtime, (2) liquidated damages, and (3) attorney's fees and costs.

8.      Plaintiff further alleges, pursuant to the NYLL and Fed. R. Civ. P. 23, that he and Class Members are entitled to recover damages from Defendants for the following violations: (1) unpaid minimum wages, (2) unpaid spread of hours, (3) unpaid overtime, (4) unpaid commissions in violation of NYLL 191(1) (c) and/or 191-c, (5) unlawful deductions from compensation, liquidated damages, (6) statutory penalties for failing to provide wage notices in compliance with NYLL 195.1, and (7) statutory penalties for failing to provide wage statements in compliance with NYLL 195.3.

9.      Plaintiff further alleges, pursuant to New York law and Fed. R. Civ. P. 23, that he and Class Members are entitled to recover damages for conversion and unjust enrichment.

10.     Plaintiff further alleges, pursuant to the WARN Act, 29 U.S.C. §§ 2101, et seq., and the New York WARN Act, Art. 25-A, §§ 860 et seq., and applicable regulations, and Fed R. Civ. P. 23, that he and Class Members are entitled to recover damages from Defendants as a result of Defendants' failure to timely provide Plaintiffs and Class Members with required written notice.

## JURISDICTION AND VENUE

11.     This Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

12.     This Court possesses jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### Plaintiff

14.     Plaintiff is a resident of Queens County, New York.

15.     Plaintiff worked as a Sales Representative for Defendants from approximately March 15, 2023 until March 10, 2024 at 1615 Northern Blvd., Ste. 301, Manhasset, NY 11030.

### Corporate Defendants

16.     Delta Bridge Funding LLC, a foreign limited liability company organized under the laws of the state of Delaware, with offices located at 1615 Northern Blvd., Ste. 301, Manhasset, NY 11030; 400 Rella Blvd., Ste. 165-101, Suffern, NY 10901; 2875 Northeast 191st Street, Ste. 500, Aventura, FL 33130  and 19505 Biscayne Blvd., Ste. 2350, Aventura, FL 33180.

17.     Cloudfund LLC, a domestic limited liability company organized under New York law, shares offices with Delta Bridge at 1615 Northern Blvd., Manhasset, NY 11030; 400 Rella Blvd., Ste. 165-101, Suffern, NY 10901; 2875 Northeast 191st Street, Ste. 500, Aventura, FL 33130 and 19505 Biscayne Blvd., Ste. 2350, Aventura, FL 33180, among others. Cloudfund operates as a "brand name" or "platform" for Delta Bridge, with no separate directors/officers or offices. CEO and co-owner of Delta Bridge, Defendant Maczuga, testified that Delta Bridge and Cloudfund are "one company" (Exhibit A, AG Complaint, pp. 20-21).

18.     Yellowstone Capital LLC and Fundry LLC, both domestic limited liability companies organized under New York law, have, during relevant periods, shared offices at 1 Evertrust Plaza, Jersey City, NJ 07302 and 160 Pearl Street, New York, NY 10007; and elsewhere.

19.     Infusion Capital Group LLC and Funderbolt Capital LLC, domestic limited liability companies organized under New York law, share an office with Delta Bridge at 1615 Northern Blvd., Ste. 301, Manhasset, NY 11030. Infusion functions as a division of Delta Bridge for marketing to merchants seeking MCAs. Defendants Melnikoff and Sanders, who directly supervised Plaintiff, are senior executives of Infusion and Funderbolt.

20.     Defendants John Doe Corporations 1-100 are additional corporate entities under the common control of Defendants that, upon information and belief, liable to Plaintiff, FLSA Collective Plaintiffs and Class Members for the violations alleged herein.

**Individual Defendants**

21.     Each of the Individual Defendants had control over the terms and conditions of Plaintiff's employment, and those of similarly situated employees. Specifically, with respect to Plaintiffs and other similarly situated employees, Individual Defendants each maintained the authority to (i) fire and hire, (ii) determine rate and method of pay (iii) adjust employee work schedules, (iv) maintain employees' employment records and (v) otherwise affect the quality of employment of Plaintiff, the FLSA Collective Plaintiffs and the Class Members. Moreover, Individual Defendants exercised functional control over the business and financial operations of the Corporate Defendants.

22.     Defendant David Glass is a resident of Fort Lauderdale, FL. Upon information and belief, Defendant Glass is an owner of, and/or maintains a senior operational and managerial role in each of Corporate Defendants, with decision-making power as to all of Defendants' employees,

including Plaintiff, FLSA Collective Plaintiffs and Class Members. Defendant Glass co-founded Yellowstone with Defendant Stern in 2009.

23.    Defendant Yitzhak Stern is a resident of Hillside, NJ. He is the CEO and an owner of Yellowstone and a senior executive and manager of Defendants' enterprise, holding decision-making power as to Plaintiff, FLSA Collective Plaintiffs, and Class Members. Defendant Stern co-founded Yellowstone with Defendant Glass in 2009 and is an active participant in the management and operations of Defendants.

24.    Defendant Reece is a resident of Providence, UT. He is the President and a part-owner of Yellowstone and a senior executive and decisionmaker with all Defendants. Defendant Reece is an active participant in the management and operations of Defendants.

25.    The New York AG's office has determined that Delta Bridge is the legal successor interest to Yellowstone. Ex. A. Upon information and belief, in 2021, due to governmental regulatory scrutiny and negative public perception of Yellowstone resulting from the company's prominent involvement in and profiteering from "loan-sharking," Defendants Glass, Stern, and Reece directed the transition of executive leadership (including Defendants Maczuga, Serebro, Melnikoff, and Sanders) and employees (including nearly all Sales Representatives then employed by Yellowstone) from Yellowstone to Delta Bridge

26.    Upon information and belief, Defendants Glass, Stern and Reece, despite nominally ceding operational control of Defendants' business to the other Individual Defendants (their former subordinates at Yellowstone) continue to operate and set policies with respect to Yellowstone, including employee policies.

27.     Defendant Maczuga is a resident of Sunny Isles Beach, FL. He is the CEO of Delta Bridge. At all relevant times, Defendant Maczuga exercised control over the employment terms and conditions of Plaintiff,  FLSA Collective Plaintiffs, and Class Members.

28.     During Plaintiff's employment, Defendant Maczuga regularly issued directives and policy statements on behalf of Defendants to Plaintiff, FLSA Collective Plaintiffs and Class Members announcing common employee and compensation policies across Defendants' business.

29.     Defendant Serebro is a resident of Yonkers, NY. He is an owner of Delta Bridge and a senior executive and decisionmaker with all Defendants. Defendant Serebro concurrently serves as General Counsel of both Delta Bridge and Yellowstone. Notably, Defendant Serebro has frequently appeared in court as counsel for both Yellowstone and Cloudfund (the alter ego of Delta Bridge), among other entities affiliated with Defendants in hundreds of proceedings against merchants. Defendant Serebro also serves as Chief Strategy Officer of Delta Bridge.

30.     Defendant Melnikoff is a resident of Roslyn, NY. He is a senior corporate officer of Delta Bridge, Infusions and Funderbolt and a senior executive and decisionmaker for Defendants' integrated enterprise. Defendant Melnikoff directly supervised Plaintiff at the 1615 Northern Boulevard office at which Plaintiff worked.

31.     Defendant Sanders is a resident of Port Washington, NY. He is a senior corporate officer of Delta Bridge, Infusion, and Funderbolt and a senior executive and decisionmaker for Defendants' integrated enterprise. Defendant Sanders directly supervised Plaintiff at the 1615 Northern Boulevard, Manhasset office at which Plaintiff worked.

**Defendants Comprise A "Single Integrated Enterprise" and "Joint Employer"**

32.     Defendants operate as a single integrated enterprise and joint employer, under the common control of Individual Defendants. They are engaged in related activities, share common

ownership and management, and have a common business purpose. Specific facts supporting the assertion that Defendants operate as a single integrated enterprise include:

a.  Defendants share a common business purpose of issuing high-interest, short-term loans referred to "merchant cash advances" (MCAs) to financially-distressed businesses.

b.  Individual Defendants each maintain either de facto or formal control of Defendants' business.

c.  Defendants Glass, Stern and Reece are owners of Yellowstone and Fundry (the parent company of Yellowstone). Defendant Serebro is the General Counsel of both Yellowstone and Delta Bridge.  Individual Defendants, Maczuga, Sanders, and Melnikoff were senior executives of Yellowstone until 2021 and are now senior corporate officials of Delta Bridge and/or nominally independent entities under the control of or affiliated with Delta Bridge, including but not limited to CloudFund, Infusion and Funderbolt.

d.  Upon information and belief, in 2021, due to governmental regulatory scrutiny and negative public perception of Yellowstone and Fundry resulting from their involvement in and profiteering from "loan-sharking." Defendants sought to abandon the Yellowstone name in an effort to deceive the regulators and the public. However, Defendants  continued the business of the company under Delta Bridge and its affiliates. New York AG's office found Delta Bridge to be a legal successor in interest to Yellowstone. Ex. A, AG Complaint.

e.  Yellowstone transferred its assets to Delta Bridge and several members of Yellowstone senior leadership (including Defendants Maczuga, Serebro,

Melnikoff, and Sanders) transitioned at this time to Delta Bridge. Ex. A, AG Complaint.

f.  The New York AG's investigation determined that Yellowstone's owners and top executives, Defendants Glass, Stern, and Reece, continue to maintain de facto control of Delta Bridge despite the nominal separation between the entities. Ex. A.

g.  Employees of Yellowstone (including nearly all Sales Representatives then employed by Yellowstone) were collectively transitioned from Yellowstone to Delta Bridge. Delta Bridge inherited merchant and vendor relationships previously held by Yellowstone.

h.  Defendants maintain centralized management and executive leadership centered in Individual Defendants that transcends offices and entities Employees of Defendants are commonly subject to the same wage and human resources policies, are subject to the same workplace rules and guidelines, and receive common on-boarding documents.

i.  Emails from CEO of Delta Bridge, Defendant Maczuga, set forth centralized policies  that apply to employees of all Defendants across offices and entities. For example, Defendant Maczuga sent out emails to all sales representatives in May 2023 instituting a commissions claw back policy, and on approximately January 1, 2024 announcing the introduction of a "claim" to commission payout procedures. Defendant Maczuga also set forth strict enterprise-wide rules for sales process and even requiring employees to follow a single script when responding to questions about the New York AG lawsuit at Ex. A.

j.   Reflecting the interrelatedness of Defendants' business operations,  Defendant Serebro simultaneously serves as the General Counsel of both institutions – has been General Counsel to Yellowstone since 2018 and General Counsel of Delta Bridge since 2021.

k.   Sales Representatives and other employees are interchangeable across Defendants' offices.  Sales representatives also use the same sales platform (Citrine) regardless of office location.

l.   Defendant Maczuga maintains centralized control of all of Defendants offices, including the New York locations, from Defendants' Florida office.

m.   Leads for potential clients were regularly provided to Plaintiff by Mark Sanders from Defendants other offices. Based on Plaintiff's observations and conversations with others, leads generated at different locations operated by Defendants were provided to FLSA Collective Plaintiffs and Class Members as well.

**Conditions Precedent to Suit**

33.   This Court has personal jurisdiction over the Defendants in that they are incorporated in the state of New York, maintain a corporate headquarters in the State of New York, are domiciled in the state of New York, and/or are subject to personal jurisdiction under NY CPLR § 302, New York's long-arm statute.

34.   Upon information and belief, Defendants employ in excess of 100 full-time employees.

35.   Each Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of each Defendant handles goods and materials produced outside of New York  that

have moved in interstate commerce, and the Defendants are thus employers subject to the jurisdiction of the FLSA.

36.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

37.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

38.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

39.    Plaintiff, on behalf of himself and all Sales Representatives employed by Defendants from six years prior to the filing of this Complaint, brings claims for relief as a collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) ("FLSA Collective Plaintiffs").

40.    Throughout the relevant period, Plaintiff and the FLSA Collective Plaintiffs were similarly situated, with nearly identical job requirements and compensation structures, and subjected to Defendants' uniform decisions, policies, and practices. This consistent treatment has resulted in a willful failure to compensate them for overtime work as required by law. The grievances articulated by Plaintiff herein mirror those affecting all FLSA Collective Plaintiffs.

41.    This claim is appropriately filed and pursued as an opt-in collective action in accordance with Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The identities and contact information of the FLSA Collective Plaintiffs are accessible through Defendants, allowing for the issuance of notices via first-class mail to their last known addresses as maintained by Defendants.

## RULE 23 CLASS ACTION ALLEGATIONS

42.    Plaintiff, on behalf of all Sales Representatives employed by Defendants from six years prior to filing this Complaint (hereafter "Class" or "Class Members"), seeks claims for relief under the Federal Rules of Civil Procedure, Rule 23.

43.    Throughout the relevant periods, Plaintiff and Class Members have been similarly situated, sharing substantially similar job requirements, pay provisions, and subjected to Defendants' uniform decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules. This unified treatment resulted in widespread failures to pay due minimum wages, overtime, earned commissions in violation of NYLL §§ 191(1)(c) and/or 191-c, illegal deductions from compensation in violation of NYLL § 193, and failure to provide required wage notices and statements in compliance with NYLL § 195.1 and § 195.3, respectively.

44.    Defendants' systematic class-wide non-compliance extends to violations under the federal and New York WARN Acts due to Defendants' failure to provide necessary notices with respect to the termination of Plaintiff and Class Members in March 2024.

45.    The claims of Plaintiff stated herein are essentially the same as those of Class Members.

46.    Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

47.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

48.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to Defendants' unlawful corporate practices and accordingly suffered the same violations

49.    Defendants' enterprise-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

50.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

51.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

52.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

53.     There are questions of law and fact common to the class which predominate over any questions, including:

a.   Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL and federal and New York WARN Acts;

b.   Whether Defendants were a joint employer as to Class Members;

c.   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

d.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

e.   Whether Defendants failed to pay Plaintiff and Class Members minimum wages due under the NYLL;

f.  Whether Defendants failed to pay Plaintiff and Class Members spread of hours premium due under the NYLL;

g.  Whether Defendants failed to pay Plaintiff and Class Members overtime due to independent contractor misclassification, in violation of the NYLL;

h.  Whether Defendants failed to pay Plaintiff and Class Members overtime due to misclassification as overtime-exempt, in violation of the NYLL;

i.  Whether Defendants failed to pay Plaintiff and Class Members earned commission payments in violation of the NYLL.

j.  Whether Defendants unlawfully deducted from Plaintiff and Class Members' compensation by diverting Plaintiff and Class Members' commissions towards Defendants' future loan syndications, in violation of the NYLL,

k.  Whether Defendants are liable to Plaintiff and Class Members for conversion for refusing to pay commissions owed;

l.  Whether Defendants are liable to Plaintiff and Class Members for unjust enrichment from diverting Plaintiff and Class Members' commissions towards Defendants' future loan syndications under false pretenses.

m.  Whether Defendants unlawfully deducted Plaintiff and Class Members' compensation from compensation by exacting  a "desk fee," in violation of the NYLL;

n.  Whether Defendants unlawfully failed to provide Plaintiff and Class Members wage notices in compliance with NYLL 195.1;

o.  Whether Defendants unlawfully failed to provide Plaintiff and Class Members wage statement in compliance with NYLL 195.3;

p.  Whether Defendants failed to provide Plaintiff and Class Members notice as required under the federal WARN act.

q.  Whether Defendants failed to provide Plaintiff and Class Members notice as required under the New York WARN act.

## STATEMENT OF FACTS

### Plaintiff's Employment With Defendants

54.     Plaintiff worked as a Sales Representative for Defendants at the Delta Bridge office at 1615 Northern Blvd., Ste. 301, Manhasset, NY 11030 (which also serves as the office of Cloudfund, Infusion, and Funderbolt) from approximately March 15, 2023 until Defendants abruptly terminated his employment on March 10, 2024.

55.     As a Sales Representative, Plaintiff's role was to find clients for Defendants' high-interest, short-term MCAs. Plaintiff's job duties largely consisted of sales calls to leads provided by Defendants, in addition to cold calls to merchants and brokers. Other FLSA Collective Plaintiffs and Class Members performed identical or substantially similar duties to those of Plaintiff.

56.     During his employment with Defendants, Plaintiff's remuneration was limited to earned commissions issued under Defendants' commissions policy. The commission structure in place at the start of Plaintiff's employment entitled Plaintiff to a commission of 8% - 12% of the profit from each funded MCA deal depending on the deal's "factor rate" (a metric representing the merchant's cost of paying back high-risk, high-interest lending products such as MCAs).

57.     On January 2, 2024, in an email sent by Defendant Maczuga to all of Defendants' employees, Defendants arbitrarily changed the commissions scheme to reduce commissions payable to Plaintiff and Sales Representatives.

58.      Throughout his employment period, Plaintiff received no remuneration other than commissions under the policy delineated above. FLSA Collective Plaintiffs and Class Members were similarly subject to Defendants' aforesaid commission policy. Like Plaintiff, FLSA Collective Plaintiffs and Class Members did not receive any remuneration other than commissions paid under the commission policy.

59.     Throughout his employment period, Plaintiff frequently worked in excess of 40 hours per week. Specifically, Plaintiff regularly worked 5 days per week, with each shift starting

at approximately 9:30 or 10am and ending between 6pm and 8pm, for a total of approximately 41-48 hours per week. Like Plaintiff, FLSA Collective Plaintiffs and Class Members frequently worked in excess of 40 hours per week.

60. Through his employment period, Plaintiff worked shifts exceeding 10 hours in duration approximately 1-2 times per week. Similarly, FLSA Collective Plaintiffs and Class Members worked shifts exceeding 10 hours in duration.

61. Pursuant to Defendants' commission payment structure, on average, Plaintiff earned approximate weekly commissions as follows:

   a. $500 per workweek during March-May 2023;

   b. $1,000 per workweek during June-October 2023

   c. $2,500 per week during November-March 2024

62. Plaintiff never received any wage notice from Defendants as required under NYLL 195.1. Plaintiff also never received any wage statements from Defendants as required under NYLL 195.3. Similarly, Class Members never received wage notice or wage statements.

63. Throughout his employment period, Plaintiff was subject to a monthly "desk fee" deducted from his compensation. The desk fee was $395 per month during 2023. Defendants increased the desk fee to $495 in 2024. Subsequently, Defendant Sanders directed Plaintiff to pay an additional $595 as part of an increased desk fee. Class Members were similarly subject to "desk fee" deductions from their wages.

64. Throughout Plaintiff's employment period, Defendants took deductions from the earned commissions of Plaintiff and other Sales Representatives for the express, stated purpose of syndicating MCAs with Delta Bridge and its affiliates. Defendants represented to Plaintiff and

other Sales Representatives that their commissions would be returned with a profit if they participated in syndication.

65.     Approximately $46,000 of Plaintiff's earned commissions during 2023 and 2024 were deducted by Defendants based on Defendants' assurance that Plaintiff would be permitted to participate in syndication of Delta Bridge MCAs to his personal financial benefit. Based on Plaintiff's conversations with other Sales Representatives, Defendants deducted similarly large amounts from the earned commissions of Class Members who received the same assurance.

66.     On March 10, 2024, Defendant Maczuga abruptly announced in an email that "Effective immediately, Delta Bridge Funding will no longer be funding any deals, new or refis." No further details were ever provided by Defendants on the layoff to Plaintiff or Class Members.

67.     Following this announcement, on March 11, 2024 Plaintiff and other Sales Representatives were immediately laid off by Defendants without notification or explanation. Plaintiff and other Sales Representatives were locked out from Defendants' email accounts, CRM, and other facilities.

68.     Plaintiff and other employees received no written notification of the layoff. Plaintiff and other Sales Representatives never received any notice, written or otherwise, for federal and state WARN act purposes, regarding whether the layoff was due to a plant closing, the date of the closing, any indication of whether bumping rights exist, contact information for any company official to contact for further information, or any information regarding unemployment insurance or job training. Upon information or belief, 50 or more full-time employees of Defendants were laid off across Defendants' business, and 25 or more employees full-time employees of Defendants' Manhasset location suffered "employment loss"

69.     On March 18, 2024, Plaintiff wrote to Defendant Maczuga, the CEO of Delta Bridge, requesting payment of his earned commissions. Plaintiff reiterated the request in a follow up email dated March 20, 2024. However, Defendant Maczuga failed to respond.

70.     Plaintiff attempted to complain to Defendant Melnikoff on March 29, 2024 via text message regarding Defendants' failure to pay him unpaid earned commissions. However, Defendants Melnikoff never responded to Plaintiff.

71.     Plaintiff repeatedly approached Defendant Sanders, requesting that his earned commissions be paid to him. Defendant Sanders told Plaintiff on March 22, 2024 that Plaintiff would be paid his earned commissions the next week. However, when Plaintiff followed up on March 29, 2024, Defendant Sanders responded by informing Plaintiff that Defendants would not pay Plaintiff his earned commissions. Defendant Sanders provided Plaintiff no reason for Defendants' refusal to pay Plaintiff back his earned commissions.

72.     Plaintiff retained TA Legal Group PLLC as counsel to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and agreed to pay the firm a reasonable fee for its services.

**Plaintiff and Class Members Are Entitled To Recover Unpaid Minimum Wages**

73.     Throughout his employment period, Plaintiff, received no pay other than commissions pursuant to the payment structure discussed above. Plaintiff was not exempt from the New York Labor Law minimum wage requirement. Therefore, Plaintiff suffered unpaid minimum wages under the NYLL and is entitled to recovery for same. Likewise, based on Plaintiff's observations and conversation with other employees of Defendants, Class Members received no remuneration other than commissions, even though they were not exempt from the NYLL minimum wage requirement, and thus suffered unpaid minimum wages.

**Plaintiff and Class Members Are Entitled To Recover Unpaid Spread of Hours**

74.    Under the NYLL spread-of-hours rule, for each shift exceeding 10 hours in duration from start to finish, a sub-minimum wage worker such as Plaintiff is entitled to an additional hours' compensation at the minimum wage. Plaintiff worked shifts exceeding 10 hours twice per week on average, but was unlawfully deprived of spread of hours premiums. Based on Plaintiff's observations and conversations with other employees, Class Members were similarly eligible for spread-of-hours premium for working shifts exceeding 10 hours. Like Plaintiff, Class Members were denied spread of hours premiums unlawfully and are entitled to recovery on that basis.

**Plaintiff, FLSA Collective Plaintiffs, and Class Members Are Entitled To Recover Unpaid Overtime**

75.    Throughout his employment period, Plaintiff worked in excess of 40 hours each workweek, but was never paid overtime. There was never any agreement that Plaintiff's compensation under the commission pay structure was inclusive of overtime premium of one and one-half times his straight time base hourly rate due under the FLSA and NYLL for all hours in excess of forty (40) worked each workweek. Based on Plaintiff's observations and conversations, FLSA Collective Plaintiffs and Class Members worked in excess of 40 hours per week and were similarly not paid overtime.

**Plaintiff, FLSA Collective Plaintiffs, and Class Members Are Non-Exempt**

76.    During his employment by Defendants, Plaintiff was never exempt from  the overtime requirements of the FLSA or NYLL under the exemptions for commissioned employees or under any other exemption.

77.    Defendants cannot rely on the overtime exemption for commissioned employees of retail and service establishments. The applicable FLSA provisions and United States Department of Labor regulations provide that this exemption only applies to employees who are:

(1) employed by a retail or service establishment, and; (2) whose regular rate of pay must exceed one and one-half times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked, and (3) where more than half the employee's total earnings in a representative period must consist of commission. 29 C.F.R. Section 7(i).

78.     Here, Defendants' business is not a retail or service establishment. Moreover, Plaintiff 's regular rate of pay was not 1.5x the minimum wage for the majority of his employment.

79.     Based on Plaintiff's observations and conversations with other employees, FLSA Collective Plaintiffs and Class Members likewise did not qualify for the commissioned exemption.

80.     Defendants similarly cannot rely on exemptions for executive, administrative or professional employees. These exemptions require that the employee be compensated on a salary basis above a certain threshold. Plaintiff was not paid on a salary basis at all.

81.     Based on Plaintiff's observations and conversations with other employees, FLSA Collective Plaintiffs and Class Members were paid like Plaintiff, and not on salaries. FLSA Collective Plaintiffs and Class Members therefore did not qualify for the executive, administration or professional exemptions.

**Plaintiff, FLSA Collective Plaintiffs And Class Members Were Employees, As Opposed To Independent Contractors**

82.     Plaintiff was an employee for FLSA, NYLL and federal and state WARN Act purposes, as opposed to an independent contractor.

83.     Defendants exercised significant control over Plaintiff's work and that of other Sales Representatives, demonstrating employee status.

84.      Plaintiff was subject to Defendants' rules and policies for Sales Representatives and received limited discretion in terms of performing of his duties. He was directly supervised by Defendants Melnikoff and Sanders, who issued direct instructions and reprimands to Plaintiff and

other Sales Representatives, and required that he and other Sales Representatives be physically present at the office each day and work at least 10pm to 6pm.

85.    Employee status is also reflected by Defendants' exerted control over the specific manner in which Plaintiff and other Sales Representatives were permitted to perform their jobs, and the limits imposed on opportunities that Plaintiff and other Sales Representatives had to profit or lose money. In this regard, Defendants directed Plaintiff and other Sales Representatives to use a specific CRM and sales platform, to market to specific leads, and to work exclusively with specific funders (namely, in Plaintiff's case, Defendants Delta Bridge, Funderbolt and entities closely affiliated with said entities) while forbidding them from syndicating MCAs with other entities. Plaintiff and other Sales Representatives were also required to obtain the approval of Defendants Melnikoff and Sanders to increase the amount of an MCA or otherwise alter terms of any deal offered to a merchant.

86.    Employee status is further supported as the degree of skill and/or independent initiative required for the position in question was low. Defendants hired Plaintiff for the job despite knowing that Plaintiff was 23 years old upon hire and had limited prior sales experience and no experience selling loans, MCAs or other credit vehicles or financial products.

87.    Employee status should also be found as Defendants actively deterred and restricted Plaintiff and other Sales Representatives from engaging in outside employment. For example, Defendant Sanders severely reprimanded Plaintiff in 2024 for independently syndicating an MCA outside of Defendants' platform with a merchant called "Uncle Vinny's Comedy Club."

88.    The fact that Plaintiff's employment with lasted a year – a relatively long period – also points to employee status rather than independent contractor status.

89.     In a deposition taken in the AG proceeding and publicly available on that Court's docket as Ex. 14 to the Complaint, Defendant Melnikoff testified (at p. 17) that Sales Representatives such as Plaintiff *"work"* for him. Defendant Melnikoff failed to identify Plaintiff and other Sales Representatives as independent contractors because they are unquestionably employees as a matter of law.

**Plaintiff and Class Members Are Entitled To Recovery of Unpaid Commissions and Double Damages Due to Defendants' Violation Of NYLL 191(1)(c) and/or NYLL 191-c**

90.     Under NYLL 191(1)(c), a commission salesperson shall be paid the commissions earned or payable in accordance with the agreed terms of employment… in no event later than the time provided in the employment agreement or compensation plan.

91.     Under NYLL 191-c, a sales representative is entitled to payment of all earned commissions within 5 days of termination of a relationship with a principal. Where a principal fails to pay a sales representative earned commissions within a 5 day period following the termination of the commission contract or arrangement, the principal is liable to the sales representative for double damages.

92.     Here, Defendants owe Plaintiff approximately $46,000 in earned commissions. Said commissions were due to be paid on March 15, 2024 or earlier.

93.     Plaintiff's employment relationship with Defendants ended on March 10, 2024. The 5-day period following termination has elapsed. Plaintiff has repeatedly asked Defendants to pay him his earned commissions; Defendants Macguza and Melnikoff ignored Plaintiff's requests, and Defendant Sanders outright refused to pay Plaintiff back.

94.     Based on Plaintiff's conversations with other Sales Representatives, Defendants have similarly failed to pay Class Members their earned commissions even though

95.     Accordingly, Plaintiff and Class Members are entitled to recovery of unpaid commissions and double damages under NYLL §§ 191(1) (c) and/or 191-c.

**Plaintiff and Class Members Suffered Unlawful Deductions From Compensation In Violation of NYLL § 193**

96.     Pursuant to NYLL § 193, an employer is not entitled to take deductions from an employee's earnings (outside of deductions required by law) unless such deductions expressly authorized in writing by the employee and are for the benefit of the employee. § 193 also bars deductions outside of certain limited purposes set forth in the statute.

97.     Here, as discussed, Defendants took deductions from Plaintiff's earned commissions based on a misrepresentation that Defendants would use Plaintiff's money to syndicate Delta Bridge MCAs, and would return Plaintiff's earned commissions with a profit. Such representation was clearly false and appears intended to defraud Plaintiff, given that Delta Bridge is no longer issuing MCAs per its CEO.

98.     Defendants' deductions from Plaintiff's commission violated NYLL § 193. They clearly exceed the scope of authorization to deduct from Plaintiff's commissions. Such deductions are plainly not to the benefit of Plaintiff given that they are tantamount to theft of the commissions. At a minimum, the money is not being used for the authorized purpose of syndicating MCAs to generate a profit for Plaintiff.

99.     Defendants deductions of "desk fees" are also in violation of NYLL § 193. "[D]esk fees" are not to Plaintiff's benefit, nor among the deductions specifically authorized under NYLL § 193.

100.    Class Members were likewise subject to the aforesaid deductions. Plaintiff and Class Members are entitled to recovery of improper deductions from earned commissions, plus liquidated damages.

**Plaintiff and Class Members Are Entitled to Recover Damages For Defendants' Conversion of Their Earned Commissions**

101.    Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. New York law recognizes an action for conversion of money (which can include withheld wages) where the plaintiff has ownership, possession or control of the money before its conversion.

102.    Defendants are liable to Plaintiff for conversion of the approximately $46,000 in earned commissions that they have unlawfully refused to pay back to Plaintiff. Prior to conversion by Defendants, Plaintiff was notified of his earned commissions via Defendants' CRM and had control of the money at such time. The earned commissions were diverted for the express and limited purpose of syndicating Delta Bridge MCAs. Delta Bridge is no longer syndicating MCAs. Nevertheless, Defendants have illegally refused to pay the commissions owed back to Plaintiff. Therefore, Defendants are liable to Plaintiff for conversion of the earned commissions that Defendants have refused to pay back as a matter of law.

103.    Based on Plaintiff's conversations with other Sales Representatives, Class Members have likewise suffered conversion of their earned commissions. Defendants diverted the earned commissions of Class Members for the express purpose of syndicating Delta Bridge MCAs. Defendants are liable for conversation to the Class because, even though Delta Bridge is no longer syndicating MCAs, Defendants have refused to pay Class Member the unpaid earned commissions owed to them.

**Plaintiff and Class Members Are Entitled to Recover Damages For Unjust Enrichment In View Of Defendants' Misappropriate of Their Commissions**

104.    To prevail on an unjust enrichment claim, a plaintiff must prove that the defendant received a benefit at the plaintiff's expense and retention of that benefit would be unjust. Here,

Defendants assumed possession of Plaintiff and Class Members' earned commissions on the false premise that such capital would be put towards Delta Bridge loan syndication. Defendants have swindled Plaintiff and Class Members out of their hard-earned commissions. It would be manifestly unjust to permit Defendants to retain same. Defendants are clearly liable to Plaintiff and the Class for damages based on a theory of unjust enrichment.

**Plaintiff and Class Members Are Entitled To Recover From Corporate Defendants For Federal and New York WARN Act Violations**

105.    The federal WARN Act, codified at 29 U.S.C. § 2102, requires employers with 100 or more employees to give employees 60 calendar days' notice in advance of plant closings and mass layoffs.

106.    Federal WARN Act notice requirements under 20 C.F.R. § 639.7(d) include:

a.  A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

b.  The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

c.  An indication whether or not bumping rights exist; and

d.   The name and telephone number of a company official to contact for further information.

107.    For federal WARN Act purposes, a "plant closing" occurs within the meaning of WARN when a "permanent or temporary shutdown of a single site of employment" leads to the loss of employment for at least 50 employees during a 30–day period. § 2101(a)(2).

108.    For federal WARN Act purposes, a "mass layoff" occurs when, not as the result of a plant closing, a reduction in force "results in an employment loss at the single site of employment during any 30–day period for—[1] at least 33 percent of the employees (excluding any part-time

employees), and at least 50 employees (excluding any part-time employees); or [2] at least 500 employees (excluding any part-time employees)."

109.    Employer liability for federal WARN Act violations can include up to 60 days of pay and benefits.

110.    The New York WARN Act is more stringent than the federal WARN Act. Under the New York WARN act, "[a]n employer who fails to give notice as required by [the Act] before ordering a mass layoff, relocation, or employment loss is liable to an employee entitled to receive notice who lost his or her employment." N.Y. LAB. LAW § 860-g. The New York WARN act requires Plaintiff to show that: (1) Defendant is an "employer," (2) Plaintiff is an "affected employee," (3) a "plant closing" or "mass layoff" occurred, and (4) Defendant failed to give ninety-days' notice.

111.    Notice under the New York WARN Act must be written. It includes the aforesaid federal law requirements, plus "Information concerning unemployment insurance, job training, and re-employment services for which affected employees may be eligible" which must include certain specific language set forth at 12 N.Y.C.R.R. § 921-2.3(b).

112.    For New York WARN Act purposes, "Plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any thirty-day period for twenty-five or more employees (other than part-time employees).

113.    For New York WARN Act purposes, a mass layoff" means a reduction in force which( 1) is not the result of a plant closing; (2) results in an employment loss at a single site of employment during any thirty-day period for: (i) at least thirty-three percent of the employees

(excluding part-time employees); (ii) at least twenty-five employees (excluding part-time employees); or(iii) at least two hundred fifty employees (excluding part-time employees).

114.    Employer liability for federal WARN Act violations can include up to 60 days of pay and benefits, plus a civil penalty of $500 per day per violation.

115.    Here, Defendants employ in excess of 100 employees and constitute an employer for purposes of both federal and state WARN acts.

116.    Defendants failed to issue WARN Act notice to Plaintiff or Class Members in accordance with either federal or New York law.

117.    Defendants violated the federal WARN Act because the reduction in force was a "mass layoff" that affected at least 50 full-time employees nationally, and at least 33% of total full time employees.

118.    Defendants violated the New York WARN Act because the reduction in force was a plant closing that affected at least 25 full-time employees at 1615 Northern Blvd., Manhasset, or, alternatively, a mass layoff that affected at least 25 full-time New York employees, and at least 33% of Defendants' total full-time New York employees.

119.    Plaintiff and Class Members are entitled to recover damages (including back pay, reasonable attorney's fees, and civil penalties of $500 per day of continued non-complaince) based on Defendants' federal and New York WARN Act violations.

**Plaintiff and Class Members Are Entitled To Recover Statutory Penalties For Violations of NYLL 195.1 and NYLL 195.3**

120.    Defendants knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiff and other non-exempt employees at the beginning of employment and annually thereafter, in violation of the applicable state wage laws.

121.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage statements at all relevant times. Class Members also did not receive proper wage statements, in violation of the applicable wage laws.

122.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

123.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, and commission payments deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Plaintiff and Class Members are therefore entitled to statutory damages.

**STATEMENT OF CLAIM**

## COUNT I – VIOLATION  OF THE FLSA

124.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

125.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

126.    At all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

127.    At all relevant times, Defendants violated the FLSA because of their policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages, including overtime wages, due to misclassification as independent contractors and/or the commissioned employee or other exemptions inapplicable to Plaintiff and FLSA Collective Plaintiffs.

128.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by

their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

129.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

130.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

131.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, due to improper deductions from their salaries, plus an equal amount as liquidated damages. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

### COUNT II – VIOLATION OF THE NEW YORK LABOR LAW

132.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

133.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

134.    Defendants knowingly and willfully failed to pay Plaintiff and Class members minimum wages in violation of the NYLL.

135.    Defendants knowingly and willfully failed to pay Plaintiff and Class members spread of hours in violation of the NYLL.

136.    Defendants knowingly and willfully failed to pay Plaintiff and Class members overtime wages in violation of the NYLL.

137.    Defendants knowingly and willfully deprived Plaintiff and Class Members of wages due to unlawful deductions in violation of the NYLL.

138.    Defendants knowingly and willfully failure to pay Plaintiff and Class Members earned commission payments in violation of the NYLL.

139.    Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

140.    Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

141.    Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid minimum wages, overtime wages, spread of hours, unlawful deductions, unpaid earned commissions, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III - CONVERSION

142.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

143.    Conversion is the unauthorized and wrongful exercise of dominion and control over another's personal property. To establish a cause of action for conversion under New York law, a plaintiff must show (1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.

144.    Here, Plaintiff and Class Members have legal ownership and a right to their earned commissions. New York law supports a conversion claim where an employee's wages – including earned commissions – are improperly withheld.

145.    Defendants deducted Plaintiff and Class Members' earned commissions fraudulently by representing to Plaintiff and Class Members that such commissions would be put towards syndication of Delta Bridge MCAs that would financially benefit Plaintiff and Class Members.

146.    Reneging on Defendants' prior representation, Defendants informed Plaintiff and Class Members that Delta Bridge would no longer syndicate MCAs. Despite Plaintiff's requests for repayment of commissions that Plaintiff undisputedly earned and is entitled to, Defendants refused to return the commissions to Plaintiff. Likewise, Defendants are refusing to return earned commissions to the Class Members.

147.    Due to Defendants' conversion of Plaintiff and Class Members' earned commissions, Plaintiff and Class Members are entitled to damages equal to the value of the commissions unlawfully converted, and an award of punitive damages in view of Defendants' fraudulent conduct.

## COUNT IV – UNJUST ENRICHMENT

148.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein,

149.    To prevail on an unjust enrichment claim, a plaintiff must prove that the defendant received a benefit at the plaintiff's expense and retention of that benefit would be unjust."

150.    Defendants effectively stole earned commissions from Plaintiff and Class Members under false pretenses. It would clearly be unjust to permit Defendants to retain that benefit. Plaintiff and Class Members are therefore entitled to relief from Defendants under New York's common law of unjust enrichment.

## COUNT V – FEDERAL WARN ACT

151.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein,

152.    Defendants employed one hundred (100) or more employees, exclusive of Part-Time employees, or employed one hundred (100) or more employees who in the aggregate worked at least four thousand (4,000) hours per week exclusive of hours of overtime within the United States.

153.    Defendants failed to issue a notice in compliance with the federal WARN Act requirement in connection with the March 2024 layoff regarding whether the layoff was due to a plant closing, the date of the closing, any indication of whether bumping rights exist, or contact information for any company official to contact for further information.

154.    Defendants violated the federal WARN Act because the reduction in force in March 2024 was a "mass layoff" that affected at least 50 full time employees, and at least 33% of Defendants' total full time employees.

155.    Due to Defendants' violations of the WARN Act, Defendants are liable to Plaintiffs and Class members for back pay and benefits for each day of the violation up to a maximum of sixty (60) days, as well as reasonable attorneys' fees and costs.

## COUNT IV – NEW YORK WARN ACT

156.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

157.    At all relevant times, Defendants employed fifty (50) or more employees, exclusive of Part-Time employees, or employed fifty (50) or more employees who in the aggregate worked at least two thousand (2,000) hours per week exclusive of hours of overtime within New York State.

158.    Defendants failed to issue a written notice in compliance with the New York WARN Act requirement in connection with the March 2024 layoff regarding whether the layoff was due to a plant closing, the date of the closing, any indication of whether bumping rights exist, contact information for any company official to contact for further information, or any information regarding unemployment insurance or job training.

159.    Defendants violated the New York WARN Act because the reduction in force was a plant closing that affected at least 25 full time employees at 1615 Northern Blvd., Manhasset, or, alternatively, a mass layoff that affected at least 25 full time employees in New York, and at least 33% of Defendants' total New York-based full time employees.

160.    Defendants are liable for back pay, reasonable attorneys fees and costs, and civil penalties of up to $500 per day of continued non-compliance.

## PRAYER FOR RELIEF

161.    WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, New York common law, and federal and New York WARN Acts;

b.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wages under the NYLL;

d.    An award of unpaid spread of hours premium under the NYLL;

e.    An award of unpaid overtime wages under the FLSA and NYLL;

f.   An award of unpaid earned commission under the NYLL;

g.   An award of damages due to unlawful deductions from wages under the NYLL;

h.   An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

i.   An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j.   An award of damages from conversion;

k.   An award of damages for unjust enrichment;

l.   An award of damages in favor of Plaintiffs and each Class Member against Defendants equal to the sum of (a) wages, salary, commissions, bonuses, accrued pay for vacation and personal days, for sixty (60) days; (b) pension, 401(k) contributions, health and medical insurance and other fringe benefits for sixty (60) days; (c) medical expenses incurred during the sixty (60) day period following their respective terminations that would have been covered and paid under the Defendants' health insurance plans had coverage under that plan continued for such period, and (d) civil penalties in the amount of $500 per day of non-compliance, all determined in accordance with the federal WARN Act and the NY WARN Act.

m.   An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

n.   Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs.

o.   Designation of this action as a class action pursuant to F.R.C.P. 23;

p.   Designation of Plaintiff as Representative of the Class; and

q.  Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury on all issues so triable as of right by jury.

Dated:       Huntington, NY
             April 8, 2024

**TA LEGAL GROUP PLLC**
*Attorneys for Plaintiff Michael Samson,*
*FLSA Collective Plaintiffs, and the Class*

By:_ _____
Taimur Alamgir
315 Main Street, Second Floor
Huntington, NY 11743
Tel. (914) 552-2669
tim@talegalgroup.com